493 So.2d 87 (1986)
Judith Ann SUTHERLAND and Brian Sutherland, Appellants,
v.
GLENS FALLS INSURANCE COMPANY, Appellee.
No. 85-1744.
District Court of Appeal of Florida, Fourth District.
September 3, 1986.
Mark R. McCollem of Chidnese & McCollem, Fort Lauderdale, for appellants.
Kathleen Z. Stacey and Robert H. Schwartz of Gunther & Whitaker, P.A., Fort Lauderdale, for appellee.
GLICKSTEIN, Judge.
We reverse the final judgment entered pursuant to the direction of a verdict in favor of the appellee insurance company and remand for new trial. The jury here could have lawfully found in favor of appellants, who contended the appellant son, Brian, was a resident of his mother's household on the day of his accident.
We are not saying the jury should have found in favor of the appellants, but only that they could lawfully have done so. According to case law, it is possible to have a residence  as opposed to domicile  in more than one place at the same time. See General Guaranty Insurance Company v. Broxsie, 239 So.2d 595, 597 (Fla. 1st DCA 1970). Brian reportedly was spending about as much time at his mother's as at the apartment. There is no record that Brian personally paid any money for the apartment until more than two weeks after the accident; everything paid prior to that was paid by his mother. There was testimony he was testing the waters  trying to determine if he could live independently from his mother. Perhaps this reflects a present intention to remove himself from his mother's residence, perhaps not. His clothing other than his work clothes was still at his mother's residence. He ate either at work or at his mother's residence. There was no phone at the apartment. It could, we think, reasonably be inferred from these facts that Brian was still a member of his mother's household, at the time of his accident, although just entering a transition period that might end in his ceasing to be a resident of that household and establishing a residence of his own. The test, as General Guaranty Insurance *88 Company v. Broxsie implied, presents no bright line. It could reasonably be concluded that, to paraphrase the words of the Broxsie trial court that were endorsed by the appellate court therein, Brian Sutherland was more than a mere visitor or transient in his mother's home, but had additional attachments, including kinship ties and access to her entire residence, that made him a more or less consistent part of the community. A jury could lawfully have found that, in the most inclusive sense of the phrase "resident of the same household," Brian Sutherland was such a resident. The policy in the instant case provides uninsured motorists coverage to a family member, and "family member" is defined therein as "a person related to you [the named insured] by blood, marriage or adoption who is a resident of your household."
Appellee, Glens Falls Insurance Company, perceives the facts and the law rather differently, and cites cases which, in its judgment, support the directed verdict.
In Sembric v. Allstate Insurance Company, 434 So.2d 963 (Fla. 4th DCA 1983), the trial court had entered an order granting a new trial, on the ground the jury's finding that the nephew was covered by his uncle's uninsured motorists insurance was contrary to the manifest weight of the evidence. On appeal, this court did not merely affirm, but directed entry of a final judgment in favor of the insurance company. Glens Falls Insurance Company relies upon Sembric as a support for the directed verdict in the present case. We think the facts of Sembric distinguish it. There the nephew lived in a house in Boca Raton that belonged to the uncle, but the uncle resided in Cleveland and only occasionally visited the Florida house.
Appellee also points to the statement in Sembric, which the opinion indicates is derived from Griffin v. General Guaranty Insurance Company, 254 So.2d 574 (Fla. 3d DCA 1971), that a policy containing a resident family household member provision requires that those members of the household dwell or live together on a permanent basis. Clearly the Sembric context for the statement is too different for us simply to lift the principle, out of context, and then dwell on the word "permanent," as appellee asks us to do. We must, however, also look at the facts of Griffin and the expression of the same proposition there.
In Griffin an uncle sought recovery, for injury in an auto accident, under his nephew's uninsured motorists coverage. The policy provided such coverage for the nephew and such of his relatives as were residents of the same household as the nephew. The trial court's declaratory decree was in favor of the insurance company. Evidently the uncle resided three or four days a week at the residence of his nephew, and the rest of the time at the domicile of his mother and stepfather. On appeal the uncle contended the trial court erred, as he resided both in his nephew's household and in his mother's and stepfather's household. The appellate court affirmed, stating that the trial judge was the trier of fact, and his conclusions are presumed correct and will not be reversed unless it is shown there was no substantial competent evidence to support them.[1]
That is quite a different posture from the present one. Were this an appeal from a verdict reached by the jury and not directed by the court, we would not hesitate to affirm. But the test for reviewing a judgment based on a directed verdict is quite different from that stated above for conclusions by the trier of fact. In the present case there is also evidence favoring the appellant, and the trier of fact should have been allowed to weigh the evidence.
Appellee cites also cases in which there were "second" residences or separate households, to support the result in the trial court. In American Security Insurance Company v. Van Hoose, 416 So.2d 1273 *89 (Fla. 5th DCA 1982), the injured persons seeking benefits under their father/grandfather's uninsured motorists coverage lived in a rented house across the street from him or for more than a year before the accident and had not ever, apparently, resided in his present home, though they often visited and ate there, and the children often spent the night there. The house in which they lived was rented in the name of the appellee, the mother of the other claimants; was fully equipped, and had electricity supplied under her name. The father/grandfather did, on the other hand, contribute considerably to the claimants' support. We think the facts of Van Hoose are sufficiently different from those in the present case to prevent close analogy. The facts of a Georgia case cited both in Van Hoose and by appellee here, Cotton States Mutual Insurance Company v. McEachern, 135 Ga. App. 628, 218 S.E.2d 645 (1975), are also considerably different. The same is true, we would add, of a case with a contrary holding that was cited in Van Hoose, Mazzilli v. Accident & Casualty Insurance Company of Winterthur, Switzerland, 35 N.J. 1, 170 A.2d 800 (1961) (Divorced husband and wife, residing in two houses husband built on same lot prior to divorce, held to reside in one household). We would judge that facts in cases of this general type are rarely so similar that the findings in one will dictate the proper result in another.
Finally, we are aware of Whitten v. Allstate Insurance Company, 476 So.2d 794 (Fla. 1st DCA 1985). Although the facts are rather different from the present ones, and Whitten involves a summary judgment, which is tested by different criteria from those applied in reviewing a judgment based on directed verdict, we think much that Judge Smith said there in his dissent, if adapted to fit the present facts, is relevant. We urge that, much as one can be a resident of a new place even though one has substantial ties to a former place of residence, one can remain a resident of one's former household while trying out different living accommodations. The Whitten majority might well disagree. More importantly, we think it is for the jury, not the court, to decide, when the evidence may be seen to point in either direction.
ANSTEAD and STONE, JJ., concur.
NOTES
[1] We would point out that while one could perhaps infer from Griffin that "permanence" of residence  whatever permanence means in a highly mobile society  was a decisive factor, there is nothing there that explicitly says so.